UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BRUCE ADDINGTON and
DONNA ADDINGTON and
ROBERT ADDINGTON,

       Plaintiffs and
       Counter Defendants,

v.                              Civil Action No. 2:12-06404

RALEIGH MINE AND INDUSTRIAL
SUPPLY, INC. and
STIRL RICHARD SMITH,

       Defendants and
       Counter Claimants.

<u>MEMORANDUM OPINION & ORDER</u>

Pending are cross motions for partial summary judgment.  The plaintiffs, Bruce, Donna, and Robert Addington, filed their motion on January 23, 2014.  The defendants, Raleigh Mine and Industrial Supply, Inc. and Stirl Richard Smith, filed their response and cross motion on February 18, 2014.


I. Factual and Procedural Background


This case arises out of a dispute between shareholders in a closely held corporation, Raleigh Mine and Industrial Supply, Inc. ("RMIS").  The plaintiffs allege that the defendants improperly declined to repurchase RMIS shares offered

for redemption by Bruce Addington.  The Addingtons also claim that RMIS and Smith deprived them of their right to cumulate their votes in the election of RMIS directors.

A.

In 1978, Bruce Addington, Robert Addington, Smith, and others formed RMIS.  Pls.' Am. Compl. ¶ 10; Answer ¶ 10.  Smith is currently the President, Chief Executive Officer, and Chairman of the Board of Directors.  Pls.' Am. Compl. ¶ 5; Answer ¶ 5.  He is also the majority shareholder.[1]  Pls.' Am. Compl. ¶ 5; Answer ¶ 5.

Bruce and Robert Addington served as officers or directors of RMIS at various points between 1978 and 2011, but presently hold no positions with the company.  Pls.' Am. Compl. ¶¶ 10, 12; Answer ¶¶ 10, 12.  Bruce owns 43 shares of RMIS stock, representing a 9.73% ownership stake in the company.  Pls.' Am. Compl. ¶ 1; Answer ¶ 1.  It appears that Robert, by 2008, owned 73 shares, but transferred his entire interest in RMIS to his wife, Donna, in September of that year.  Pls.' Am. Compl. ¶¶ 2-3, 10; Answer ¶¶ 2-3, 10.

---

[1] Although Smith initially owned 84 shares of common stock in the company, he eventually acquired 168 additional shares, bringing his total ownership stake to 252 shares, representing 57.01% of RMIS's issued and outstanding common stock.  Pls.' Am. Compl. ¶¶ 5, 11; Answer ¶¶ 5, 11.

At some point in 2011, Robert and Bruce Addington were removed as directors of RMIS.  Pls.' Am. Compl. ¶ 22; Answer ¶ 22.  Thereafter, on August 31, 2011, Bruce Addington wrote to Smith, indicating that he intended to dissociate from RMIS and offering to sell his 43 remaining shares to the company.  Pls.' Mot. Sum. J., Ex. C at 1.[2]  He asserted that RMIS was required to repurchase his stock according to the terms of a Stock Redemption Agreement ("Redemption Agreement") that RMIS and its shareholders entered into on March 28, 1981.  Id. at 2-3. Specifically, Addington cited Article IV of the Redemption Agreement, which states that, if a shareholder dissociates from the company for any reason other than death, disability, or retirement, "[RMIS] will purchase shares offered [for redemption] at actual book value[.]"  Pls.' Mot. Sum. J., Ex. A at 4-5.[3]

In a letter dated September 29, 2011, RMIS's Secretary, Judith Smith, responded to Addington's offer.  She stated that a "special meeting of [RMIS's board of directors] was called to consider [Addington's] offer to sell [his] shares," but that the board had ultimately voted to decline the

---

[2] "Pls.' Mot. Sum. J., Ex. C" refers to a letter from Bruce Addington to defendant Smith, dated August 31, 2011.

[3] "Pls.' Mot. Sum. J., Ex. A" refers to a copy of the Redemption Agreement, executed March 28, 1981.

3

offer.  Pls.' Mot. Sum. J., Ex. D at 1.[4]  According to the
complaint, RMIS later argued that its "refusal to purchase [the]
shares was based upon an unsigned document entitled Amendment to
the Buy/Sell Agreement [(the "Amendment")] dated July 24,
1984[.]"  Pls.' Am. Compl. ¶ 24; Answer ¶ 24.  RMIS maintained
that the Amendment modified the Redemption Agreement and vested
RMIS's board of directors with discretion to decline to purchase
shares offered for redemption under certain circumstances.
Pls.' Am. Compl. ¶ 25; Answer ¶ 25.  It appears, from evidence
submitted by the defendants, that the Amendment was adopted by a
vote of the RMIS board of directors at a special meeting held on
July 24, 1984.  See Defs.' Mot. Sum. J., Ex. B.  In their brief
in support of their motion for summary judgment, the plaintiffs
maintain that they do not "recollect ever reviewing, agreeing
to, or approving . . . any [] amendment to the [Redemption
Agreement]," but offer no evidentiary support for that
assertion.  Pls.' Sum. J. Mem. at 2 n.2.

On May 21, 2012, RMIS held its annual shareholders
meeting.  Pls.' Am. Compl. ¶ 26; Answer ¶ 26.  At the meeting,

---

[4] "Pls.' Mot. Sum. J., Ex. D" refers to a letter from RMIS
Secretary Judith Smith to Bruce Addington, dated September 29,
2011.

Robert Addington[5] nominated Bruce and himself to serve as RMIS directors.  Pls.' Am. Compl. ¶ 28; Answer ¶ 28.  The plaintiffs allege that Robert "insisted that the shareholders be granted their constitutional right to cumulate their votes," but the defendants "refused to honor the shareholders' legal right to cumulative voting, [and] . . . Smith was [therefore] able to improperly and illegally abuse his majority shareholder position and block [the Addingtons] from their legal right to serve on" the RMIS board of directors.  Pls.' Am. Compl. ¶ 29.  The defendants deny that allegation.  Answer ¶¶ 29, 31.

B.

On October 9, 2012 the plaintiffs filed the initial complaint in this case.  The matter was thereafter temporarily stayed for approximately seven months at the request of the parties in order to facilitate settlement negotiations.  Those negotiations ultimately failed to bear fruit, and the plaintiffs filed an amended complaint on October 2, 2013.

In Count I of their amended complaint, the Addingtons charge the defendants with "illegally refus[ing] to honor the

---

[5] The complaint alleges that Robert Addington was empowered to act on Donna Addington's behalf by virtue of a proxy that was delivered to RMIS prior to the May 21, 2012 annual meeting. Pls.' Am. Compl. ¶ 27.  The defendants do not admit this allegation in their Answer, and neither party has pointed to any evidence in the record to establish that fact.

right of RMIS shareholders to cumulate their votes in the
election of directors," as protected by Article XI, Section 4 of
the West Virginia Constitution.  In Count II, they assert that
the Amendment to the Redemption Agreement is invalid and
unenforceable.  Those two counts are the only counts in the
four-count amended complaint that are the subject of the
plaintiffs' motion for summary judgment.[6]

The defendants answered and counterclaimed on October
16, 2013.  They admit most, though not all, of the plaintiffs'
factual allegations, and, in their counterclaim, seek, among
other things, a declaration that the Amendment to the Redemption
Agreement is valid and enforceable.[7]  It is this claim for which
they seek summary judgment.

Regarding Count I, plaintiffs request a declaratory
judgment, pursuant to 28 U.S.C. § 2201(a), that RMIS
shareholders are entitled to cumulative voting in the election
of directors.  Pls.' Am. Compl. ¶ 34.  As to Count II,

---

[6] In Count III the plaintiffs allege that the defendants
improperly declined to repurchase Bruce Addington's shares of
RMIS stock.  In Count IV they claim that Smith breached his
fiduciary duties to the minority shareholders of RMIS in a
number of ways.

[7] The defendants also charge the plaintiffs with breach of
contract and breach of fiduciary duty.  Those counterclaims are
not the subject of the pending cross-motion for summary
judgment.

plaintiffs ask for a declaratory judgment stating that the Amendment is "invalid and unenforceable and thus does not alter, modify or amend the [Redemption Agreement]," as well as a declaration that "RMIS is legally required to purchase a disassociated stockholder's RMIS stock pursuant to" the Redemption Agreement.  See Pls.' Am. Compl. ¶¶ 37-38.  The defendants, in addition to opposing the plaintiffs' request for summary judgment on Counts I and II, seek judgment in their favor on the question of the Amendment's validity.

The court has diversity-of-citizenship jurisdiction over the cross motions, pursuant to 28 U.S.C. § 1332, inasmuch as the Addingtons are Kentucky citizens, RMIS and Smith are West Virginia citizens, and the amount in controversy does not appear to a legal certainty to be less than the jurisdictional minimum.

## II. Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

7

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing—"that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the nonmovant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must not resolve disputed facts, weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), or make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Discussion

### A. Count I

In Count I, the plaintiffs seek a declaration that "RMIS shareholders are entitled . . . to cumulative voting in the election of RMIS's directors."[8] Pls.' Am. Compl. ¶ 34. They

---

[8] A district court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 if two conditions are satisfied: "First, the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution[.] . . . Second, the trial court, in its discretion must be satisfied that declaratory relief is appropriate[.]" White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 913 F.2d 165, 167 (4th Cir. 1990). To satisfy the "case or controversy" requirement, the dispute must be "definite and concrete" -- that

claim that Article XI, Section 4 of the West Virginia

constitution guarantees them the right to cumulate their votes

in the election of RMIS directors.  The defendants, for their

part, assert that West Virginia Code § 31D-7-728 permits

cumulative voting only where authorized by a corporation's

articles of incorporation.  They maintain that neither RMIS's

articles of incorporation nor its prior practices in past

elections suggest that shareholders are entitled to cumulate

their votes.  The Addingtons reject those arguments, reasoning

---

is, "a real and substantial controversy admitting of specific
relief of a conclusive character, as distinguished from an
opinion advising what the law would be upon a hypothetical set
of facts."  Id. at 167-68 (quoting Aetna Life Ins. Co. v.
Haworth, 300 U.S. 227, 240-41 (1937)).  Phrased another way,
"[t]he question is 'whether the facts alleged, under all the
circumstances, show that there is a substantial controversy,
between parties having adverse legal interests of sufficient
immediacy and reality to warrant the issuance of a declaratory
judgment.'"  Id. (quoting Md. Cas. Co. v. P. Coal & Oil Co., 312
U.S. 270, 273 (1941)).

        It appears that the plaintiffs seek a declaration that
cumulative voting is available to them in future elections.
Pls.' Sum. J. Mem. at 2 ("[D]eclaratory judgment on Count I is
needed to protect the [p]laintiffs from future violations of
their constitutional rights.").  The possibility of a future
dispute over cumulative voting is sufficiently concrete and
immediate to warrant the issuance of a declaratory judgment.
RMIS's bylaws provide for the annual election of directors,
Defs.' Sum. J., Ex. G ¶ 1(c), there is no suggestion that Bruce
or Donna Addington have sold their shares of RMIS stock since
this suit was initiated, and the parties briefing reveals an
ongoing dispute over the availability of cumulative voting.
Under these circumstances, the case presents, at a minimum, the
following concrete question: does the ownership of RMIS stock
entitle Bruce and Donna Addington to cumulate their votes in
future elections of RMIS directors?  As to Count II, the ongoing
dispute concerning the Amendment's validity is similarly
susceptible to resolution by a declaratory judgment.

that no statute or private agreement may "trump the provisions
of Article XI, Section 4."

1.

The right to cumulative voting in the election of
corporate directors was unknown to the common law of West
Virginia, and was not established or guaranteed by the State's
first constitution.  See Dewey Portland Cement Co. v. O'Brien,
96 S.E.2d 171, 174 (W. Va. 1956).[9]  Indeed, between 1863 and
1868, it appears that the West Virginia Legislature enacted at
least two statutes governing shareholder voting, neither of
which addressed cumulative voting.  See O'Brien, 96 S.E.2d at
174 ("At the first session of the Legislature of this State, by
Chapter 83, Section 22, . . . the rule was . . . changed to
provide for 'one vote for every share of stock not exceeding one
hundred; and one vote for every four shares exceeding one
hundred.'  The Code of 1868, Chapter 53, Section 44, provided

_____

[9] As the court in O'Brien explained, shareholders at common law
held only one vote regardless of the number of shares they
owned, 96 S.E.2d at 174, and the West Virginia constitution of
1863 did not specifically address the voting rights of
shareholders, see W. Va. Const. art. XI, § 5 (1863) (providing
for the creation of a general body of corporate law, but not
specifically enumerating the right to cumulative voting),
reprinted in Ordinances and Acts of the Restored Government of
Virginia, Prior to the Formation of the State of West Virginia;
with the Constitution and Laws of the State of West Virginia, to
March 2d, 1866 (John Frew ed. 1866).

11

that there should be 'one vote for every share of stock held in
such company.'").

That changed in 1872, however, when the State adopted
a new constitution that guaranteed shareholders the right to
cumulate their votes in the election of corporate directors and
managers.  W. Va. Const. of 1872 art. XI, § 4; see also Robert
M. Bastress, The West Virginia State Constitution 265 (1995)
(noting that Article XI, Section 4 "had no analogue in the prior
Virginia and West Virginia constitutions," and was apparently
designed "to guarantee stockholder control of a corporation and
to ensure an equitable system of voting"); Jeffrey N. Gordon,
Institutions as Relational Investors, 94 Colum. L. Rev. 124, 188
(1994) (stating that West Virginia "adopted mandatory cumulative
voting in 1872").  Specifically, Article XI, Section 4, entitled
"Rights of [S]tockholders", stated:

> The Legislature shall provide by law that in all
> elections for directors or managers of incorporated
> companies, every stockholder shall have the right to
> vote, in person or by proxy, for the number of shares
> of stock owned by him, for as many persons as there
> are directors or managers to be elected, or to
> cumulate said shares, and give one candidate as many
> votes as the number of directors multiplied by the
> number of his shares of stock, shall equal, or to
> distribute them on the same principle among as many
> candidates as he shall think fit; and such directors
> or managers shall not be elected in any other manner.

W. Va. Const. of 1872 art. XI, § 4, reprinted in Constitution of West Virginia as Adopted in 1872 (Union Publishing Co. 1911).

The Supreme Court of Appeals of West Virginia first interpreted the new constitutional language concerning cumulative voting in Cross v. West Virginia Central & Pittsburgh Ry. Co., 12 S.E. 1071 (W. Va. 1891), in which the plaintiff claimed he had been lawfully elected through cumulative voting, but held out of office by the defendant, a railroad corporation organized under West Virginia law.  The defendant maintained that, by the terms of its articles of incorporation, shareholders were entitled to only one vote for every share owned, and not permitted to cumulate their votes.  Siding with the plaintiff, the Supreme Court of Appeals concluded that the language of Article XI, Section 4 left "no reasonable question that the stockholders . . . had . . . the right to cumulate their votes," regardless of language to the contrary in the defendant's articles of incorporation, and ordered the defendant to recognize the plaintiff as a duly elected director.  Cross, 12 S.E. at 1073, 1075; O'Brien, 96 S.E.2d at 175 ("[T]his Court held that by the 'last clause' of Section 4, Article XI, the owner of shares of stock in a corporation could not be deprived of the right to vote such shares by the cumulative method in an election of directors of the corporation." (citing Cross)).

13

Following the ruling in <u>Cross</u>, the Supreme Court of
Appeals consistently interpreted Article XI, Section 4 as a
robust bulwark against restrictions on shareholder voting
imposed by statute, <u>O'Brien</u>, 96 S.E.2d at 180 (rendering invalid
"all . . . Acts of the Legislature[]" to extent inconsistent
with Article XI, Section 4), and  against limitations contained
in articles of incorporation, <u>see</u> <u>Syphers v. McCune</u>, 101 S.E.2d
834, 838 (W. Va. 1958) (stating that "[the] provisions of all
charters of corporations issued by the State are subject to the
limitations imposed by . . . Article XI, Section 4," and holding
that "a plan which prevents the full enjoyment of [the right to
cumulative voting wa]s . . . illegal"). In <u>O'Brien</u>, for
example, the Supreme Court of Appeals invalidated State laws
that authorized the issuance of shares with limited or no voting
rights, holding that they were incompatible with Article XI,
Section 4's broad command that all shareholders were entitled to
vote in the election of corporate directors.  96 S.E.2d at 179-
80 ("Article XI, Section 4 . . . is a clear, emphatic command to
the Legislature that every stockholder shall have the right to
vote . . . in all elections for directors or managers[.] . . . .
[A]ll . . . Acts of the Legislature, wherein it is provided that
any limitation may be placed upon the right of an owner of a
share of stock in any corporation, created under the laws of

14

this State, to vote for directors or managers of such
corporation . . . are, by this decision, made invalid to the
extent [inconsistent with article XI, Section 4].").

The practical effect of the O'Brien decision, a later
court explained, "was to invalidate the charter provisions of a
large number of domestic corporations which had . . . issued[]
shares of stock with limited or no voting rights[.] Diamond v.
Parkersburg-Aetna Corp., 122 S.E.2d 436, 440-41 (W. Va. 1961).
As a result, Article XI, Section 4 was amended in 1958, and now
provides as follows:

> The Legislature shall provide by law that every
> corporation, other than a banking institution, shall
> have power to issue one or more classes and series
> within classes of stock, with or without par value,
> with full, limited or no voting powers, and with
> preferences and special rights and qualifications, and
> that in all elections for directors or managers of
> incorporated companies, every stockholder holding
> stock having the right to vote for directors, shall
> have the right to vote, in person or by proxy, for the
> number of shares of stock owned by him, for as many
> persons as there are directors or managers to be
> elected, or to cumulate said shares, and give one
> candidate as many votes as the number of directors
> multiplied by the number of his shares of stock shall
> equal, or to distribute them on the same principle
> among as many candidates as he shall think fit; and
> such directors or managers shall not be elected in any
> other manner.

W. Va. Const. art. XI, § 4 (amendments emphasized).  In Diamond,
the Supreme Court of Appeals explained the effect of the
amendment, as it relates to cumulative voting:

15

[I]t is clear that these and other provisions of the amendment are intended to mean that . . . a stockholder holding stock which gives him full voting powers shall have the right to vote for the number of shares owned by him for as many persons as there are directors or managers to be elected, or to cumulate his shares; that a stockholder holding stock which gives him the limited right to vote for more than one director or manager but for less than the total number of directors or managers to be elected shall have the right to vote for that number of directors or managers, or to cumulate his shares; that a stockholder holding stock which gives him no voting powers can not vote for any directors or managers to be elected and can not cumulate his shares; and that a stockholder holding stock which gives him the right to vote for only one director or manager can vote for only one of the directors or managers to be elected and can not cumulate his shares for the reason that his vote for one director or manager can not be cumulated.

122 S.E.2d at 444.  Thus, under the prevailing constitutional framework, shareholders holding stock giving them the right to vote for more than one director or manager retain the constitutional right to cumulate their votes.  Id.

2.

Section 31D-7-728, upon which the defendants rely, was enacted in 2002 as part of the West Virginia Business Corporation Act ("WVBCA"), a wide-ranging piece of legislation that comprehensively revised the State's corporate law.  It provides, in full, as follows:

(a) Unless otherwise provided in the articles of incorporation, directors are elected by a plurality of

16

the votes cast by the shares entitled to vote in the
election at a meeting at which a quorum is present.

(b) Each shareholder or designated voting group of
shareholders holding shares having the right to vote
for directors has a right to cumulate his or her votes
for directors.

(c) A statement included in the articles of
incorporation that "all or a designated voting group
of shareholders are entitled to cumulate their votes
for directors", or words of similar import, means that
the shareholders designated are entitled to multiply
the number of votes they are entitled to cast by the
number of directors for whom they are entitled to vote
and cast the product for a single candidate or
distribute the product among two or more candidates.

(d) Shares otherwise entitled to vote cumulatively may
not be voted cumulatively at a particular meeting
unless:
>     (1) The meeting notice or proxy statement
>     accompanying the notice states conspicuously that
>     cumulative voting is authorized; or
>
>     (2) A shareholder who has the right to cumulate
>     his or her votes gives notice to the corporation
>     not less than forty-eight hours before the time
>     set for the meeting of his or her intent to
>     cumulate his or her votes during the meeting and
>     if one shareholder gives this notice all other
>     shareholders in the same voting group
>     participating in the election are entitled to
>     cumulate their votes without giving further
>     notice.

W. Va. Code § 31D-7-728.

        The defendants maintain that there is no statement in

RMIS's articles of incorporation that would "entitle [the

plaintiffs] to the operative language of [section 728(c)],"

seemingly asserting that such a statement is <u>required</u> to

17

establish the right to cumulative voting.  But that argument
overlooks section 31D-7-728(b), which provides -- in language
mirroring Article XI, Section 4 of the State constitution --
that "shareholders holding shares having the right to vote for
directors ha[ve] a right to cumulate [their] votes for
directors."  Compare W. Va. Code § 31D-7-728(b) ("Each
shareholder or designated voting group of shareholders holding
shares having the right to vote for directors has a right to
cumulate his or her votes for directors."), with W. Va. Const.
art. XI, § 4 ("every stockholder holding stock having the right
to vote for directors, shall have the right to . . . cumulate
said shares").  That language appears to establish a right to
cumulative voting that is coextensive with the constitutional
right discussed above.

        As a result, the defendants' argument would seem to
suggest that section 728(c) should be read to qualify or limit
the rights established in section 728(b).  Doing so, however,
would bring the statute into tension with the State constitution
-- a result that courts avoid when possible.  See Adkins v.
Miller, 421 S.E.2d 682, 688 & n.6 (W. Va. 1992) ("[W]herever an
act of the Legislature can be so construed and applied as to
avoid a conflict with the [State or federal constitution], and

                                18

give it the force of law, such construction will be adopted by
the courts." (quotation marks and citation omitted)).

The apparent tension between the text of section
728(b) and section 728(c) may be explained by the fact that the
WVBCA was adapted from the Model Business Corporations Act
("MBCA").  Section 7.28 of the MBCA, which provides the template
for section 31D-7-728 of the WVBCA, provides as follows:

(a)  Unless  otherwise  provided  in  the  articles  of
incorporation, directors are elected by a plurality of
the votes cast by the shares entitled to vote in the
election at a meeting at which a quorum is present.

(b)  Shareholders do not have a right to cumulate their
votes    for    directors    unless    the    articles    of
incorporation so provide.

(c)  A  statement  included  in  the  articles  of
incorporation that "all or a designated voting group
of shareholders are entitled to cumulate their votes
for directors" (or words of similar import) means that
the  shareholders  designated  are  entitled  to  multiply
the number of votes they are entitled to cast by the
number of directors for whom they are entitled to vote
and  cast  the  product  for  a  single  candidate  or
distribute the product among two or more candidates.

(d) Shares otherwise entitled to vote cumulatively may
not  be  voted  cumulatively  at  a  particular  meeting
unless:
(1)  The  meeting  notice  or  proxy  statement
accompanying the notice states conspicuously that
cumulative voting is authorized; or

(2) A shareholder who has the right to cumulate
his or her votes gives notice to the corporation
not less than 48 hours before the time set for
the meeting of his or her intent to cumulate his
or her votes during the meeting and if one
shareholder   gives   this   notice   all   other

19

> shareholders in the same voting group
> participating in the election are entitled to
> cumulate their votes without giving further
> notice.

MBCA § 7.28 (emphasis added).


As the highlighted text indicates, subpart (b) of the MBCA eliminates the right to cumulative voting unless the articles of incorporation provide for it.  In that context, subpart (c), which defines how articles of incorporation can establish the right to cumulative voting, makes considerable sense.  As discussed above, however, the text of section 728(b) of the WVBCA departs dramatically from the MBCA in order to reflect that the West Virginia constitution lodges the right to cumulative voting in the nature of the shares held by the stockholder, rather than the articles of incorporation.

Given that the Legislature substantially modified section 728(b) of the WVBCA to account for the constitutional right to cumulative voting established by Article XI, Section 4, there is little reason to think that section 728(c) was intended to drastically undercut that right.  Rather, the better course is to read section 728(c) as an additional, complimentary source of cumulative voting rights.  In other words, section 728(b), like Article XI, Section 4 of the constitution, grants shareholders the right to cumulate their votes if they hold

stock entitling them to vote for more than one director.
However, the right to cumulative voting may also be established
by specific language in the articles of incorporation, as
articulated in section 728(c).

3.

Article XI, Section 4 grants shareholders the right to
cumulate their votes if they hold stock entitling them to vote
for more than one director, as does section 31D-7-728(b), and
section 31D-7-728(c) does not diminish that right.
Nevertheless, the plaintiffs do not assert, either in their
complaint or in their motion for partial summary judgment, that
RMIS shareholders are entitled to vote for multiple directors.
Under Rule 56(a) of the Federal Rules of Civil Procedure, the
moving party is entitled to summary judgment if he shows that
there is no genuine dispute as to any material fact "and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  Rule 56(c)(1) requires a party asserting that a
fact cannot be genuinely disputed to support the assertion by
citing to particular materials in the record.  Here, the
plaintiffs have not asserted (much less shown) that holders of
RMIS stock are entitled to vote for more than one director, and
that fact is material to the determination of Article XI,

21

Section 4's applicability.  Accordingly, the plaintiffs have not shown that they are entitled to judgment as a matter of law, and their motion seeking a declaration that RMIS shareholders have the right to cumulative voting is therefore denied without prejudice.

    B. Count II

    In Count II, the plaintiffs seek a declaration that the Amendment to the Redemption Agreement is invalid and unenforceable, and request a related declaration that RMIS is required to repurchase shares offered for redemption under the terms of the Redemption Agreement.  The defendants, maintaining that the Amendment is valid and was duly adopted by the RMIS board of directors, counterclaim and seek a declaration of the Amendment's validity.

                              1.

    On March 28, 1981, RMIS and its shareholders executed the Redemption Agreement in order to, among other things, "provide a means by which [s]hareholders [could] dispose of their interest in [RMIS]."  Pls.' Mot. Sum. J., Ex. A at 1.[10]

---

[10] "Pls.' Mot. Sum. J., Ex. A" refers to a copy of the Redemption Agreement, executed March 28, 1981.

Article IV of that agreement provided that, in the event that a shareholder died or terminated his association with the corporation, RMIS would "purchase any shares offered for redemption[.]"  Id. at 4.  "If disassociation result[ed] for any reason other than death, disability, or retirement," the Redemption Agreement stated that RMIS would "purchase shares offered [for redemption] at actual book value."  Id.  Under the terms of Article IX, the Redemption Agreement could be "altered, amended or terminated" when "reduced to writing and signed by all of the [s]tockholders and [RMIS]."  Id. at 8.

According to evidence submitted by the defendants in support of their cross motion, the RMIS board of directors discussed adding the Redemption Agreement to the by-laws of the corporation at a board meeting held on April 3, 1981.  Defs.' Mot. Sum. J., Ex. A at 2.[11]  Following the discussion, Robert Addington moved that the Redemption Agreement be inserted as section 3-C of the RMIS bylaws, and the motion was carried.  Id.

_____

[11] "Defs.' Mot. Sum. J., Ex. A" refers to a copy of the minutes of the RMIS board meeting held on April 3, 1981.  The plaintiffs do not object to the admissibility of this evidence.  The minutes are accompanied by an affidavit, signed by Judith Smith, RMIS's Secretary, attesting that the "photocopies of minutes of the meetings of the [RMIS board of directors] are true and accurate photocopies of minutes . . . maintained in the records of the corporation in its normal course of business."  Defs.' Mot. Sum. J., Ex. F ("Smith Aff.").  They would therefore appear to be admissible under Federal Rule of Evidence 803(6).

Just over three years later, on July 24, 1984, minutes submitted by the defendants indicate that the RMIS board held a special meeting at which a motion was made to amend the Redemption Agreement in order to "prevent further financial drain on [RMIS] due to the required purchase of shares of stock offered for redemption." Id., Ex. B.[12]  A copy of the proposed Amendment was presented to the board, after which "[a] motion was made by Bruce Addington[,] and . . . passed by a majority, to accept the [A]mendment to the [Redemption Agreement]." Id.  The minutes go on to state that a copy of the Amendment was "attached to the[] minutes and the original [Redemption Agreement]." Id.

The plaintiffs have furnished a copy of the Amendment, which states, in full, as follows:

> That [RMIS] shall purchase shares of stock offered for redemption by the shareholders, so long as in the exclusive opinion of the Board of Directors, that the purchase is in the best interest of the corporation, and that the corporation is in a financial position to purchase the stock.  The decision of the Board of directors shall be exclusive and final.
>
> AMENDED: July 24, 1984

Apart from the date indicated above, the Amendment itself bears no signatures.  The minutes of the July 24, 1984

---

[12] Defs.' Mot. Sum. J., Ex. B" refers to a copy of the minutes of the RMIS board meeting held on July 24, 1984.

meeting were, however, signed by all then-existing RMIS
shareholders.[13,14]

### 2.

The plaintiffs argue that the Amendment is invalid
because it does not conform to the requirements set forth in
Article IX of the Redemption Agreement.  Specifically, they note
that the Amendment is not signed by anyone, let alone all of the
shareholders and RMIS.  The defendants maintain that the
Amendment was validly adopted by the RMIS board of directors at
the July 24, 1984 special meeting.  They assert that the actions
taken at the special meeting meet the requirements of Article IX
of the agreement because the text of the proposed Amendment was
reduced to writing and presented to the Board, and because the
minutes of the meeting were signed by each then-existing RMIS
shareholder.  The relevant question, then, is whether the

---

[13] The minutes were signed by Smith, Robert and Bruce Addington,
Adrian Evans, and Emmett Allen.  A stock ownership ledger
submitted by the defendants in support of their cross motion for
summary judgment indicates that Smith, Evans, Allen, and the
Addingtons were RMIS's only shareholders in 1984.  See Defs.'
Mot. Sum. J., Ex. E.

[14] As noted, the plaintiffs assert, without any evidentiary
support, that they do not "recollect ever reviewing, agreeing
to, or approving . . . any [] amendment to the [Redemption
Agreement]."  Pls.' Mot. Sum. J. at 2 n.2.  This bald allegation
is not sufficient to create a genuine issue of material fact.
Coleman v. United States, 369 F. App'x 459, 461 (4th Cir. 2010)
("The nonmoving party may not rely on briefs, conjecture,
speculation, or conclusory allegations to defeat a motion for
summary judgment.").

unsigned written text coupled with the signed minutes satisfies Article IX's requirement that any amendment be "reduced to writing and signed by all of the [s]tockholders and [RMIS]."

Though not controlling, the reasoning of the New York Court of Appeals in DFI Communications v. Greenberg, 363 N.E.2d 312 (N.Y. 1977) is instructive. In that case, the corporation, DFI, entered into stock purchase and employment agreements with Greenberg. The stock purchase agreement stated that it could "not be changed or terminated orally"; and the employment agreement could "not be changed, rescinded or altered or amended except by an agreement had in writing and signed by both [parties]." Id. at 313. As here, the parties later sought to modify both agreements, discussed doing so at a meeting of the board of directors, and ultimately voted to adopt changes. The minutes of the meeting contained a detailed description of the proposed changes and the board's rationale for accepting them, and were signed, as required, by DFI's Secretary. Id. at 314-15. In addition to the language in the two agreements, New York law required the modifications to be "in writing and signed by the party against whom enforcement of the change is sought or by his agent." Id. (quoting N.Y. Gen. Oblig. Law § 15-301). Consequently, that case, like this one, "pose[d] the novel question whether minutes of a meeting of a corporate board of

26

directors signed by an officer, the secretary of the corporation, which recite[d] that the board has agreed to modify a corporate contract and which also set forth in detail the terms of the modification," constituted an acceptable signed writing.  <u>Id.</u> at 313.

Ultimately, the Court of Appeals concluded that the minutes constituted a valid modification for three reasons. First, the court reasoned that the agreement was "in writing" because the "complete amendatory agreement between the parties [wa]s contained in the signed minutes as well as the board's reasons for its adoption."  To suggest otherwise, the court reasoned, "would be a hypertechnical, overly formalistic and erroneous interpretation of the statutory requirement."  <u>Id.</u> at 315.  Second, the court held that the minutes, if duly signed by the corporate Secretary as alleged, were properly "signed" by the corporation.  <u>Id.</u> at 316 ("This requirement may be satisfied where an officer, here the secretary of the corporation, whose duty it is to record them, has duly subscribed the minutes.").  Third, and finally, the court concluded that the form of the amendment was valid because nothing in New York law required the signed writing to be in the form of an "additional formal agreement."  <u>Id.</u> at 315-16.

27

In this case, Article IX states that the Redemption Agreement "may be altered, amended and terminated and such shall become effective when reduced to writing and signed by all the [s]tockholders and [RMIS]."  The minutes of the July 24, 1984 meeting indicate that the RMIS board contemplated amending the Redemption Agreement in order to prevent undue financial strains on the corporation.  Although the precise terms of the Amendment are not recited, the minutes indicate that the Amendment was presented to the board, approved by majority vote, and attached to the minutes.  The minutes were signed by RMIS's corporate Secretary, and by all of RMIS's then-existing shareholders. Finally, nothing in the language of Article IX required the signed writing to take a particular form.  Thus, as in Greenberg, the minutes of the July 24, 1984 RMIS board meeting constitute a signed writing sufficient to modify the Redemption Agreement.

3.

Even if the Amendment did not satisfy the terms of Article IX of the Redemption Agreement, the common law of contracts and principles of equity would counsel in the defendants' favor.

28

First, a provision stating that a contract can be modified only by a subsequent writing can itself be rescinded by parol, leaving the contract subject to modification by other means.  Williston on Contracts § 73:22 (4th ed. 2014).  Cases from West Virginia have long recognized this principle.  See, e.g., Simpson v. Mann, 76 S.E. 895, 896 (W. Va. 1912) ("If the written contract contains an express provision that no change or modification thereof can be made, except by writing to be signed by one or both parties, the parties to such contract may, nevertheless, modify or abrogate it by subsequent oral agreement, since the oral agreement will operate as a waiver of the terms of the contract inconsistent therewith, including that term which requires subsequent modification to be in writing." (citation and quotation marks omitted)); Syl. Pt. 2, Jones v. Kessler, 126 S.E. 344 (W. Va. 1925) ("[A] written contract may be modified or its terms altered by a subsequent valid oral agreement, and this may be shown in a proper case.  As a rule a consideration must be shown.").  Here, the minute transcripts submitted by the defendants show that the RMIS shareholders and directors discussed amending the Redemption Agreement and ultimately agreed to do so in order to provide the corporation with greater financial flexibility.  Consequently, it appears that the RMIS shareholders reached an oral agreement, solemnized by formal vote, to modify the Redemption Agreement.  Neither

party explains why that "oral agreement [should not] operate as a waiver of the terms of the contract inconsistent therewith, including that term which requires subsequent modification to be in writing." Cf. Simpson, 76 S.E. at 896.

Second, "equity regards that as done which ought to be done," and courts will, as a result, "give effect to the intention[s]" of contracting parties when they have endeavored in good faith to modify their agreement, even if certain formal details have not been completed. See Union Mut. Life Ins. Co. v. Lindamood, 152 S.E. 321, 322-23 (W. Va. 1930) (holding that change in life insurance beneficiary was valid despite noncompliance with certain policy terms governing change of beneficiary). In this case, as noted, a copy of the Amendment was presented at the July 24, 1984 RMIS board meeting, discussed, voted upon, and approved. The actions taken were memorialized in minutes signed by all of the shareholders and by the corporate Secretary. Under those circumstances, the failure of the shareholders to subsequently sign the copy of the Amendment itself should not defeat the modification that the parties endeavored to adopt.

Accordingly, the plaintiffs' motion for summary judgment is denied as to Count II, and the defendants' cross motion for summary judgment as to Count II is granted.

30

IV. Conclusion


For the foregoing reasons, the plaintiffs' motion for partial summary judgment is denied without prejudice as to Count I and otherwise denied.  The defendants' motion for summary judgment as to Count II and their counterclaim respecting the validity of the Amendment is granted.


The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

DATED: July 17, 2014

John T. Copenhaver, Jr.
United States District Judge